## Case No. 17,873.

### The WINIFRED.

[Blatchf. Pr. Cas. 33.] [1]

District Court, S. D. New York. Aug., 1861.[2]

ENEMY VESSEL—CONDEMNATION—NEUTRAL OWNERS OF CARGO—LIENS.

1. Vessel condemned as enemy property.

2. A part of her cargo condemned as enemy property, although under hypothecation to a neutral merchant for advances on the invoice and bill of lading.

3. The title of the absolute owner prevails, in a prize court, over the interest of a lien holder, whatever the equities between those parties may be.

In admiralty.

BETTS, District Judge. The bark Winifred was seized on the 25th of May, 1861, by the United States steamship Quaker City, under command of Acting Master F. W. Mathews, on the high seas, off Cape Henry, and libelled for attempting to violate the blockade of Hampton Roads, in Virginia, and enter that place, it being then blockaded; also, because the vessel and cargo were at the time owned by enemies of the United States. The charge of violating the blockade was abandoned by the district attorney on the trial, and the confiscation of the vessel and cargo was demanded as being enemy's property. The firm of Crenshaw & Co. intervene for the vessel and five-eighths of her cargo, "as sole owners thereof," and claim that they are all citizens of the United States of America, trading in Richmond, Virginia, under the style of Crenshaw & Co., and that the bark "belongs to Richmond, aforesaid." The exemption of the vessel from liability to capture as enemy's property is put upon the denial in the claim that the claimants were insurgents, traitors, &c., or enemies of the United States. John Lewis and Charles Paul Phipps, having their principal house at Liverpool, England, under the style of Phipps & Company, and John Lewis, Phipps, and others, trading in the city of New York, through their branch house here, under the style of J. L. Phipps & Co., and in Rio, Brazil, under the style of Phipps Brothers & Company, intervened, and claimed to be owners of three-eighths of the cargo of the bark, and to have a lien on, and claim to, and right to the possession of the balance of the cargo, under large advances by them to the other claimants, Crenshaw & Co., and that the claimants are all British subjects; that on the 26th of April, 1861, before any seizure of the vessel and cargo, the claimants bona fide, in the usual course of business, and having no other security, made a special advance to Crenshaw & Co., owners of the residue (five-eighths) of the cargo, of the sum of $20,622.26, on possession of the original invoice and bill of lading thereof, and that such assignment of five-eighths of the cargo to these claimants by Crenshaw & Co. was without any fraudulent purpose or understanding to secure it from confiscation as the property of Crenshaw & Co. The test oath of part of the claimants verifies the bona fides and just consideration of such assignment to them.

The general positions of law and fact adopted by the court in regard to the preceding suits apply to the corresponding points raised in this one: (1) There was, at the time of

---

[1] [Reported by Samuel Blatchford, Esq.]

[2] [Modified by the circuit court; case unreported.]

the capture of the vessel and cargo a state of civil war subsisting between the citizens of that portion of the state of Virginia in which Richmond is situated and the United States. (2) The owners and claimants of the vessel were public enemies of the United States and its government at the time of her being taken and seized, and she thereby became subject to condemnation. (3) The owners of the vessel in their claim and answer assert they were sole owners of five-eighths of the cargo of coffee shipped on her at Rio Janeiro and bound to Hampton Roads, and it was consigned to them in the bill of lading found on board the ship. But a title to that portion upon bona fide hypothecation or lien is set up in the claim of Phipps & Co., to the amount of $20,622.26. No evidence is produced verifying the justness and validity of such lien.

The case, as it stands on the allegations and proofs, fixes the right of property in the five-eighths portion of the cargo to be in the owners of the vessel at the time it was shipped. That title must prevail in a prize court, in priority to the subsidiary interest of the lien holders (The Marianna, 6 C. Rob. Adm. 24), whatever the equities between the particular parties may be (The Frances, 8 Cranch [12 U. S.] 418), unless it be proved aliunde by the claimants, and that their title to this part of the cargo was absolute in them previous to its exportation.

The judgment of the court upon the whole case, therefore, is that three-eighths parts of the coffee be restored to the claimants, Phipps & Co., as neutral owners, without costs, and that the remaining five-eighths thereof be condemned as forfeited, being the property of Crenshaw & Co., enemy owners, and also that the vessel be condemned as enemy's property, with full costs. Further proofs will, however, if prayed for, be granted the claimants, on the claim of Phipps & Co. to the possession and right of property in themselves, as against the libellants, in that portion of coffee alleged by those claimants to be vested in them, by way of transfer or lien from Crenshaw & Co. The question of costs on such further proofs is to be reserved until a final hearing on that point.

The judgment now rendered is to be final, unless application to give further proofs is made by the claimants on notice to the libellants, and allowed by the court, within ten days after the entry of this decree.

The decree in this case was affirmed by the circuit court on appeal July 17, 1863, except as to five-eighths of the cargo condemned below. As to that the circuit court allowed further proofs. On those that court, December 3, 1863, allowed Phipps & Co. the amount of their advance on the five-eighths, with interest, to be paid out of its proceeds. [Case unreported.]